UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| ANTHONY R. KERN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Cause No. 3:19-cv-0146-RLY-MPB |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM IN OPPOSITION
## TO KERN'S 28 U.S.C. § 2255 MOTION

Anthony Kern has filed a motion, pursuant to 28 U.S.C. § 2255,

claiming that his counsel was ineffective during the plea process and his plea

was not voluntary. (Dkt. 1, 2.) Kern's counsel was not ineffective. And, as

the record clearly reflects, Kern's plea was knowing and voluntary. Thus,

this Court should deny Kern's challenges.

## BACKGROUND[1]

### *Kern's Criminal Conduct*

The facts of Kern's crimes, as provided in the stipulated factual basis in

the plea agreement are as follows:

---

[1] Throughout the brief, the government will make the following references:
Dkt. = the docket in this case; Crim. Dkt. = the docket in Kern's criminal
case, Cause No. 3:15-cr-39-RLY-CMM; PSR = Kern's presentence report; Plea
T. = Kern's plea hearing held on June 11, 2018; and Sent. T. = Kern's
sentencing hearing held on August 27, 2018.

Beginning at least as early as October 1, 2014, the defendant knowingly, intentionally, and willfully entered into an unlawful agreement with other persons in the "Kern Methamphetamine Drug Trafficking Organization" to distribute methamphetamine.

From approximately October 1, 2014, until July 1, 2015, the defendant obtained more than 1.5 kilograms of methamphetamine ice, but less than 4.5 kilograms of methamphetamine ice, all of which defendant distributed to other members or associates of the Kern Methamphetamine Drug Trafficking Organization in the Southern District of Indiana.

During the period of the defendant's involvement, the defendant and other members of the Kern Methamphetamine Drug Trafficking Organization distributed methamphetamine, and conducted other acts in furtherance of the unlawful agreement, in the Southern District of Indiana and elsewhere.

The defendant knew that the substances that the defendant distributed were controlled substances.

(Crim. Dkt. 46, ¶ 10.)

### Charges, Plea, and Sentencing

On September 30, 2015, an indictment was filed against Kern, charging that he conspired to possess with intent to distribute and to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Crim. Dkt. 1.) On October 27, 2015, David Lamont was appointed to represent Kern. (Crim. Dkt. 10.)

On June 27, 2017, the United States filed an information pursuant to 21 U.S.C. § 851 providing notice of the Kern's prior felony drug conviction and the enhanced statutory penalties. (Crim. Dkt. 33.)

On May 10, 2018, the parties filed a petition to enter a plea of guilty and plea agreement (with a stipulated factual basis included) pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), wherein Kern agreed to plead guilty. (Crim. Dkt. 46.) The government agreed to dismiss the § 851 information at sentencing. (Plea ¶ 1B.)

The parties agreed to a sentence of 216 months of imprisonment. (Plea ¶ 9.) Kern agreed to waive his right to appeal the conviction and sentence as long as he received a sentence of 216 months' imprisonment. (Plea ¶ 15.) Kern also agreed not to contest, or seek to modify his conviction or sentence in any action, including § 2255. (Plea ¶ 16.) The plea agreement contained a sentencing guideline calculation that provided for a base offense level of 36, pursuant to U.S.S.G. § 2D1.1(c)(2) and three-levels would be subtracted for acceptance of responsibility. (Plea ¶ 14.)

A presentence report (PSR) was prepared. (Crim. Dkt. 51.) The PSR was consistent with the plea agreement in determining that Kern's total offense level was 33 for Count 1. (PSR ¶¶ 27-36.)

Based upon a total offense level of 33 and a criminal history category of V, the guideline imprisonment range was 210 to 262 months. (PSR ¶ 77.)

On June 11, 2018, the Court held Kern's change of plea hearing. (Crim. Dkt. 49.) The Court found a factual basis for the plea and that the plea was

voluntarily made and accepted the plea agreement, adjudging Kern guilty as charged. (*Id.*)

On August 27, 2018, the Court held Kern's sentencing hearing. (Crim. Dkt. 53.) Following the terms of the plea agreement, the Court sentenced Kern to 216 months' imprisonment. (Crim. Dkt. 54.) The United States moved to dismiss the § 851 information, which was granted by the Court. (Crim. Dkt. 53.)

Kern did not appeal his conviction or sentence.

But, on July 26, 2019, Kern filed a motion to vacate his sentence under § 2255. (Dkt. 1-2.) Kern claimed his counsel was ineffective during plea negotiations and he failed to object or request a downward departure to his criminal history category. (Dkt. 2, pp. 5-10.) Kern also claims that his plea was not voluntary, because he was being housed at Henderson County Detention Center and "he believed accepting the government's plea agreement was his only way out." (Dkt. 2, pp. 11-13.)

## STANDARD OF REVIEW

"Relief under § 2255 'is reserved for extraordinary circumstances.'" *Hays v. United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)). The reason is straightforward: "because it asks the district court essentially to reopen the

4

criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

"Hence, relief is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)); *see* 28 U.S.C. § 2255(a).

## DISCUSSION

### I.  Ineffective Assistance of Counsel Standard

In order to prove ineffective assistance of counsel, Kern must meet the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that (1) his attorney performed deficiently, and (2) the deficiency in performance prejudiced him. *Id.*

In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Holman v. Gilmore*, 126 F.3d 876, 881-81 (7th Cir. 1997). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead emphasized that '[t]he proper measure of attorney performance remains simply

reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

The prejudice prong of the *Strickland* test requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694; *see also Bell v. Cone*, 535 U.S. 685, 697-98 (2002). It is not enough for Kern to show that "the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

A court "need not consider the first prong of the *Strickland* test if [it] find[s] that counsel's alleged deficiency did not prejudice the defendant." *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003) (*citing Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)). "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Kern's right to effective counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). On the performance prong, Kern must show that counsel's representation in connection with the plea process "fell below an objective standard of reasonableness." *Id.* at 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). In this context, the Court must take particular care to avoid the "distortions and imbalance that can

inhere in a hindsight perspective[.]" *Premo v. Moore*, 562 U.S. 115, 125 (2011).

To establish prejudice, Kern must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Thus, Kern must show prejudice "by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Moreover, Kern's claims must be viewed in context of his guilty plea. "Surmounting *Strickland*'s high bar is never an easy task." *Lee*, 137 S. Ct. at 1967 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "[A]nd the strong societal interest in finality has 'special force with respect to convictions based on a guilty plea.'" *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). Thus, "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.*

Kern cannot meet either prong of this standard for either of his claims.

## II. Kern's Counsel Was Effective in Obtaining a Beneficial Plea

### A. Lamont was not deficient

First, Kern claims his counsel failed to obtain a more beneficial plea agreement.

That is not a viable claim. "Whether [Kern's attorney] could have negotiated a better plea deal is irrelevant to the issue of prejudice in the ineffective assistance of counsel context." *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006); *cf. Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009); *Short v. United States*, 471 F.3d 686, 696–97 (6th Cir. 2006); *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999); *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986); *Burnett v. United States*, 2017 WL 6988653, at *3 (N.D. Ill. Dec. 18, 2017). Kern cannot prevail by speculating about a hypothetical plea deal.

Even if he could, he still could not prevail. Nothing in the record even suggests that the government would have offered a better deal. *See Frye*, 566 U.S. at 148. And during the sentencing, the government clearly stated that it "does not have the approval" for a different plea. (Sent. T. 21.) No better plea was in the offing, thus Kern has no viable claim here. This Court should deny Kern's speculative claim.

In all events, the record establishes that Kern was pleased with his deal. First, Kern had no complaints or questions during his plea colloquy, even when presented with multiple opportunities to inform the Court of any dissatisfaction.

> THE COURT: Are you satisfied with Mr. Lamont's representation of you?

THE DEFENDANT: Yes, I am.

THE COURT: I also have a plea agreement. Have you had an opportunity to read and discuss the plea agreement with your attorney before you signed it?

THE DEFENDANT: Yes, sir, we have.

THE COURT: Your signature on this document tells me, among other things, that you've read it, you understand it, and you agree with it. Is that true?

THE DEFENDANT: Yes, I do.

(Plea T. pp 4-5.)

THE COURT: Did you discuss this with your attorney?

THE DEFENDANT: Yes, we have.

THE COURT: Is this all voluntary?

THE DEFENDANT: Yes, it is.

(Plea T. p. 11.)

THE COURT: You discussed all this very thoroughly with your attorney?

THE DEFENDANT: Yes, we have.

(Plea T. p. 12.)

THE COURT: Mr. Kern, do you have any questions about anything?

THE DEFENDANT: No, sir, I don't.

(Plea T. p. 23.)

THE COURT: Any questions about anything?

THE DEFENDANT: No, sir.

THE COURT: If you do, your attorney is a very experienced criminal defense lawyer. He'll able to answer those questions for you.

(Plea T. pp. 24-25.)

Only during sentencing, held two and half months later did Kern

questions his plea:

THE DEFENDANT: First of all, I'd like to say, you know, this case has been going on for three years and I'm sorry for taking so much time with the Court. I would also like to let the Court know that during my arraignment three years ago, you know, I had offered Mr. Lamont to go ahead and speak with Ms. Wheatley and tell her I would do ten years right there. And I didn't understand how the offense level and the criminal worked at that time. So Ms. Wheatley, I'm sorry for saying such a low number. No disrespect. And you know, so I tended -- I knew I was guilty. The life I was living was horrible and I knew it was just a matter of time before I got caught. And so -- but I just want the Court to know from Day 1 I was willing to plead guilty, you know. That I never intended to fight my case.

But what I was wanting the Court to also know, I sit three years over in Hendricks County and living conditions are tough over there. I've made it three years over there with not a write-up, one. As a matter of fact, I did eight months in the Life Change Program and you know, it's really helped me. And I also got to where I'm able to help others now, and I've also been a GED tutor for two years. I made it three years without a write-up in that building and that's almost impossible to do.

And now, not only am I able to see my light at the end of this tunnel because I am trying to live a different life and be a different person, you know, I've got the three ladies that mean a lot to me, you know. And I just want to be different. My grandson and, you know -- so I've got a stack of certificates and stack of

letters that I've been doing -- busting my butt to not get caught up in no trouble over there at the jail.

And what I'm wanting the Court to know, I want to lower the sentencing and I hope that we can; but what I also want the Court to know is I signed this plea bargain because I am guilty of it and -- but I want to bring up in May of 2017, Mrs. Wheatley had emailed my attorney an offer -- a plea offer, which was an open plea with no enhancements. And Mr. Lamont was busy and it was six weeks that went by before I got to see him. You know, from the day he got the email, six weeks had elapsed. When he showed up, we had our visit six weeks later, he said that he'd gotten an email from Mrs. Wheatley.

Told me it was open plea with no enhancements. We understood that was my best deal and that's what I wanted. Upon him leaving, he said he'd go see about getting it printed up and he would be back. I'm not sure the exact -- two or three days later he showed up back and he handed me a 851 enhancement. And I was like: How did this happen? Two days ago you was going to go get me an open plea with no enhancements. He said he didn't know how it happened and he stated that he had even contacted Ms. Wheatley and said: You know, Mrs. Wheatley, you gave us an offer and I didn't realize I was running out of time, you know.

That I have a lot going on and that in the future, before that happens, would you please send me an email and let me know we're running out of time before you file an enhancement. I didn't -- you know, Ms. Wheatley, I did not take that plea because I was delaying you. I just never seen it. From my understanding, that was the plea I was getting. So then at this time I had an 851 filed on me now. So that's what prolonged us another year was trying to get that off, you know. And you know, I just felt like my – you know, I -- I totally accept what I've done, you know. And not only have I tied up the Court's time, I wasn't very good in society either, you know. I was hurting families about as bad I was my own. I was -- you know, instead of offering Ms. Wheatley ten years, I would come off 15 or 16 from Day 1. I just didn't know how it worked. I didn't mean to offend her with ten years. Now that I know how it works, I don't deserve ten years. I was just hoping -- and I felt like I should have said this

last time at court, but I was scared to death and I didn't. I just wanted -- I just -- I just don't think it was really fair that I didn't get that plea bargain because that was what -- my understanding, that's what we was doing.

And I didn't know -- I don't want to not get sentenced today because I've been three years already and I want to hold my grandson and my mom and my daughter. You know, and I just -- I just wasn't sure -- if there's any way I could get that plea bargain, you know, if we could all come together and say that it wasn't my fault that I didn't get to sign that, if I could get that plea and go on with sentencing today.

And if not, then I definitely want to go on with what I got now. You know, I accept full responsibility and you know, I am guilty of what I done. And there's nothing that I would argue about in my stuff except I just – you know, what, sir, would it be possible to get my original plea and stand here before you and let you sentence me.

(Trial T. pp. 14-17.)

The Court inquired if Kern was withdrawing his plea of guilty and Kern did not indicate that he was. (Trial T. pg. 17.) The government then addressed Kern's concerns:

MS. WHEATLEY: Thank you, Your Honor. Your Honor, the government would note the government is dismissing the 851 information. So there are no enhancements in the plea agreement. So I hope the defendant understands that. And also, the government did offer a B plea at the early stages and -- to guidelines; and so far Mr. Kern has agreed to a C plea, which is 216 months and his guidelines are 210 to 262.
So the C plea that he has agreed to is just six months shy of the very low end of the guidelines, to which the government would have been arguing for a guideline plea and B plea anyway. So I want you to understand that, sir.

THE DEFENDANT: Okay.

12

(Trial T. pg. 18.)

The Court again tried to clarify Kern's intention and he responded by

stating:

> THE DEFENDANT: I was just -- I was just kind of confused, you know, because, you know, if I would have got that plea, I thought like, you know, on part of my PSI here Mr. Coomes, you know, he said I was eligible for departure because of my criminal history being overstated. You know, I've got seven criminal history points just for driving a car with no license, you know. So I'm Category IV just for no drugs or alcohol, just driving. Category IV right off the bat, you know. You know -- but no, sir, I definitely don't want to -- I want to go on with my guilty plea. I was just hoping -- I wasn't sure if we could even do it. I just want to ask the Court if it would be possible that everybody agree that I was offered that plea bargain and that I should have gotten it but –
>
> THE COURT: I think I indicated to you last time we appeared in court on a recommended binding plea agreement like this is –
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- is 216 months, whatever, I can accept it or I can reject it.
>
> THE DEFENDANT: Yeah.
>
> THE COURT: And if I reject it, you'll be allowed to withdraw your plea of guilty. Of course, then the negotiations start over again. You can either go to trial by jury or by court, or you can plead without a plea agreement but your exposure here is that 851 is always out there.
>
> THE DEFENDANT: Yeah. That's what I was wanting to ask. I wasn't sure if Ms. Wheatley would agree – that's why I didn't know if we could take this one back and Ms. Wheatley agree to give me that other plea back.
>
> THE COURT: The 851 is always out there.

13

THE DEFENDANT: Without the 851.
(Trial T. pp. 20-21.)

The Government replied to Kern's inquiry and clearly reiterated the

facts regarding his plea offer.

MS. WHEATLEY: Just so you understand, when you say plea,
there was really only one plea that was essentially written up
and approved by my supervisor, and that was the plea that you
have signed.

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

MS. WHEATLEY: And part of that plea was the government
agreed to dismiss the 851 in your case. So the only other offer
that was out there before the 851 was filed was just that you
plead to the charge and that the government would ask for
guideline range, which was -- which you're calling the open plea,
which is what's called a B plea.

THE DEFENDANT: Okay.

MS. WHEATLEY: At this point in time, the government does not
have that approval. I have the approval for the C plea that you
signed, and I certainly can't tell you what you should do or should
not do. I can only tell you that I have approval on this date right
now for the C plea that has been filed with the Court.

MR. LAMONT: I would like you to know that we have discussed
that. That the range, according to the presentence investigation,
is 210 months to 262 months. You understand that?

THE DEFENDANT: Yes.

MR. LAMONT: And that just because a probation officer, under
factors that may warrant a departure –

THE DEFENDANT: Right.

MR. LAMONT: -- that's up to the judge. It may or may not. And a potential grounds for departure doesn't mean that you're going to get below 210 months. The judge could give you the guidelines in-between and it would be 236 months or it could go higher or it could go lower. You understand that?

THE DEFENDANT: Yeah. That's what I was wondering.

MR. LAMONT: You're taking a risk of asking for an open plea because you don't know what's going to happen.

THE DEFENDANT: Right.

MR. LAMONT: You understand that?

THE DEFENDANT: Yes; but I mean --

MR. LAMONT: I just want to know you understand it.

THE DEFENDANT: Yeah; but I -- but I wouldn't want to do it if I'm going to get an 851 filed on me today. You know what I'm saying?

MR. LAMONT: The 851 has not been dismissed yet. So it's still on you.

THE DEFENDANT: Right.

THE COURT: Do you wish to proceed on with this sentencing, Mr. Kern?

(Trial T. pp. 21-23.)

Not deterred, Kern again requested clarification from the government before finally agreeing to go forward with the sentencing.

THE DEFENDANT: Can I ask Ms. Wheatley one question, please?

THE COURT: You might ask your attorney that first.

THE DEFENDANT: That if we give her some time to see if she could get approval, get my other plea back, and if she can't, that I could still have this plea.

MS. WHEATLEY: Okay. First off, Mr. Kern, I generally do the negotiations with an attorney.

THE DEFENDANT: Sorry.

MS. WHEATLEY: That's okay. But I just want you to know, since we're on the record, after I filed the 851 information, it takes a lot to get an 851 information dismissed.

THE DEFENDANT: I understand.

MS. WHEATLEY: We don't file them regularly and we also don't dismiss them regularly; and your attorney, Mr. Lamont, has spent a great deal of time in my supervisor's office explaining your case and his situation, and then and only then did my supervisor agree to allow me to dismiss the 851 with this specific plea agreement.

THE DEFENDANT: Okay.

MS. WHEATLEY: So I cannot make you or Mr. Lamont any promises whatsoever because that, again, is the plea agreement to which my supervisor agreed.

THE DEFENDANT: Yes, ma'am. I'd like to go on with sentencing, please.

THE COURT: I can't hear.

THE DEFENDANT: I would like to go on with sentencing, please.

THE COURT: All right.

(Sent. T. pp. 23-24.)

As an initial matter here, Kern's statements at the change of plea hearing "are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *Hurlow*, 726 F.3d at 968 ("[R]epresentations made to a court during a plea colloquy are presumed to be true.") (citation and internal quotation marks omitted).

Regardless, Kern is now making an identical claim that he made at the hearing, and it must fail. Lamont was not deficient. As shown above, the government stated that Lamont spent a great deal of time with a governmetn supervisor to get this plea deal, this is not the actions of an ineffective attorney.

Lamont's commendable performance during plea negotiations undermines Kern's *Strickland* argument. Kern's claim should be considered in light of the unique and nuanced nature of plea bargaining. "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo*, 562 U.S. at 124. This uncertainty inherent in plea bargaining increases the already substantial burden on Kern to show ineffective assistance. *Id*. at 132.

In fact, Lamont would have been deficient if he undermined the plea deal. The government could have chosen not to dismiss the § 851, which increased Kern's mandatory minimum to 20 years' imprisonment. But, under

the plea deal counsel negotiated, the government agreed to dismiss the § 851 enhancement and provide three-level reduction for acceptance of responsibility. (Crim. Dkt. 46.) Ultimately, in very large part due to Lamont's negotiations, Kern received a sentence of 216 months instead of a mandatory minimum 20 years.

Lamont had no reason to risk such a beneficial deal. At the time of plea negotiations, no competent attorney would have advised engaging in futile challenges when their client faced a significantly worse downside. *See, e.g., Premo*, 562 U.S. at 124. Lamont's strategic decisions made during the plea bargaining resulted in a highly beneficial deal for the defendant and were not ineffective.

Kern has failed to show how Lamont was ineffective.

## B. Kern also cannot show he suffered prejudice

Kern has no claim that Lamont's performance prejudiced him in any way. First, he has not claimed that he, otherwise, would have proceeded to trial. *Lee*, 137 S. Ct. at 1966-67 (a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial.) In fact, he consistently holds that he was going to plead guilty from the beginning of his case. (Dkt. 2.)

And he cannot show prejudice by positing a potential—but entirely speculative—better plea offer. *Bethel*, 458 F.3d at 720.

18

In the end, Kern received the exact sentence he agreed upon, and also by following Lamont's advice and pleading guilty, received a sentence well below what he could have faced without the plea. And he could have faced a more severe sentence had he chosen to go to trial. Thus, Lamont's advice to accept the government's plea offer not only meets the *Strickland* standard of reasonableness, but remains the best strategy even in hindsight.

Further, the contemporaneous evidence refutes any prejudice claim. Kern was permitted to discuss his concerns with the Court and the government and made the decision to proceed. Kern readily pleaded guilty and nothing suggests that was anything but his own decision, counseled by his attorney. Kern suffered no prejudice.

## II. Kern's Attorney Was Not Ineffective for Failing to Argue for a Departure Based on Kern's Criminal History

### A. Kern fails to show any deficiency from Lamont

Next, Kern claims Lamont was ineffective for failing to object to Kern's criminal history category and to seek a downward departure based on his criminal history. (Dkt. 2, pp. 7-10.)

But any such argument would have been futile in light of Kern's guilty plea. As shown above, Kern knowingly and voluntarily agreed to plead guilty to a sentence of 216 months' imprisonment. And the Court, following the terms of his plea agreement, accepted that recommendation. Thus, for

Lamont to argue anything further would have been futile. Kern had already agreed upon a sentence.

And Kern explicitly said at the sentencing hearing that he did not want to withdraw from his plea. During his statement to the Court, he discussed his criminal history and thus, the Court was aware of his concerns:

> THE DEFENDANT: I was just -- I was just kind of confused, you know, because, you know, if I would have got that plea, I thought like, you know, on part of my PSI here Mr. Coomes, you know, he said I was eligible for departure because of my criminal history being overstated. You know, I've got seven criminal history points just for driving a car with no license, you know. So I'm Category IV just for no drugs or alcohol, just driving. Category IV right off the bat, you know. You know -- but no, sir, I definitely don't want to -- I want to go on with my guilty plea. I was just hoping -- I wasn't sure if we could even do it. I just want to ask the Court if it would be possible that everybody agree that I was offered that plea bargain and that I should have gotten it but –
>
> THE COURT: I think I indicated to you last time we appeared in court on a recommended binding plea agreement like this is –
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- is 216 months, whatever, I can accept it or I can reject it.

(Sent. T. p. 20.)

Thus, Kern contemporaneously said "I *definitely* . . . want to go on with my guilty plea." (*Id.* (emphasis supplied).) Thus, he cannot show that he wanted to withdraw from his plea and proceed to trial based on criminal history points. Thus, because he did not want to risk his plea deal, his

attorney cannot have been deficient for disputing an issue that would have

risked that deal (in fact, disputing that issues and jeopardizing Kern's plea

deal against Kern's wishes would have been deficient performance). *Cf. Lee*,

137 S. Ct. at 1966-67. Kern's claim must fail.

In all events, there were no compelling objections to make. And

"counsel cannot be said to be deficient for failing to take frivolous action,

particularly since a frivolous effort takes attention away from non-frivolous

issues . . . [and] it is evident that failing to make a motion with no chance of

success could not possibly prejudice the outcome." *United States v. Carter*,

355 F.3d 920, 924 (7th Cir. 2004).

Kern's criminal history consisted of the following felony convictions:

operating while intoxicated; theft; operating a vehicle as a habitual traffic

offender; two operating a vehicle after lifetime suspension; and possession of

cocaine. (PSR ¶¶ 39-50.) Kern's criminal history score was 11 which

provided for a criminal history category of V. (PSR ¶ 51.)

As the Court explained, Kern's criminal history points were correctly

calculated (even if Kern thought they were overstated):

> The defendant does have, as he mentioned, criminal history
> points -- seven criminal history points regarding motor vehicle
> convictions, habitual lifetime suspension, habitual traffic
> offender, those types of things. And criminal history may be
> overstated but also he has that conviction which generates the
> 851. So he would, if he was found guilty of this instant offense
> and also proved to be true that he had that prior criminal

conviction for substance abuse offense, drug conviction, that he would be looking at 240.

(Sent. T. p. 28.)

Kern cannot show that Lamont performed deficiently.

## B. Kern Can Show No Prejudice

Kern explicitly stated that he did not want to forego his plea agreement. (Sent. T. p. 20.) Thus, he cannot show that he would have gone to trial but for Lamont's deficiencies. *Lee*, 137 S. Ct. at 1966-67. That failure prevents his claim.

Further the substantive futility of any objection also precludes any claim of prejudice.

Kern suffered no prejudice.

## IV. Kern's Plea Was Knowing and Voluntary

Kern now claims that was induced to plead quickly because of the overcrowding at Henderson County Detention Center. (Dkt. 2.) He does not claim anyone coerced him to plead, only that "he was simply desperate to get away from those stark conditions." (Dkt. 2, p. 13.)

But that is not a valid claim. "In order for a plea to be valid, it must be made voluntarily, knowingly, and intelligently." *United States v. Hays*, 397 F.3d 564, 567 (7th Cir. 2005) (citing cases). A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware

of the direct consequences of the plea. *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir.1989) (*citing Brady v. United States*, 397 U.S. 742, 755 (1970)). In evaluating the constitutional validity of a guilty plea, courts look to the totality of the circumstances surrounding the plea and grant the defendant's solemn declaration of guilt a presumption of truthfulness. *United States v. Moussaoui*, 591 F.3d 263, 277 (4th Cir. 2010). Kern's claim that his plea of guilty was "not voluntary" is clearly refuted by the record. (Dkt. 2, p. 11.) *See United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) ("A defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, however, faces a heavy burden of persuasion.") (internal quotation marks and citation omitted).

Kern alleges nothing to cast doubt upon the voluntariness of his plea. He does not allege coercion. He does not allege threats. Nor does he make any claims of innocence or that he wanted to proceed to trial.

And the contemporaneous evidence refutes any such claim. As provided earlier, Kern clearly stated to the Court "I just want the Court to know from Day 1 I was willing to plead guilty." (Sent. T. p. 14.) Kern pleaded guilty of his own free will.

The plea agreement buttresses that conclusion. Kern signed the plea agreement which specified that he: read the indictment and the discussed the charges and possible defenses with his attorney; understood the charges

against him; read the plea agreement and discussed it with his attorney; understood the terms of the plea agreement; was satisfied with his attorney's representation; made no claim of innocence; and, was freely and voluntarily pleading guilty. (Crim. Dkt. 46.) The plea agreement identified the charge against Kern, the elements of the offense, and provided the factual basis for the guilty plea by describing the acts and conduct supporting the charge. (*Id.* at ¶¶1, 3, 10.) The plea agreement made clear that the agreed upon 216 month sentence was binding on the court if the plea agreement was accepted. (*Id.* at ¶ 5.)

The Court's plea colloquy further removes any doubt. At the plea hearing, the Court conducted a thorough colloquy pursuant to Rule 11. The Court insured that Kern understood the nature of the charge against him, the elements of the offense the government would need to prove, the maximum penalty possible under the charge, and the applicability of the sentencing guidelines. (Plea T. pp. 4, 6-10.) The Court also insured Kern's understanding of his right to a jury trial, his right to have a lawyer assist him at trial, and his right against self-incrimination. (Plea T. pp. 14-15.)

Kern, sworn under oath, affirmed his understanding of the charges against him, the terms of the plea agreement, and entered his plea of guilty. (Plea T. p. 22.) And the Court accepted that plea finding that Kern was fully competent and capable of entering an informed plea; aware of the nature of

the charge and the consequences of his plea, and that the plea of guilty was knowing and voluntary. (Plea T. p. 23.)

The validity of a Rule 11 colloquy is based on the totality of the circumstances, and includes the following factors: "the complexity of the charge, the defendant's level of intelligence, age, and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government." *United States v. Blalock*, 321 F.3d 686, 688-89 (7th Cir. 2003). Kern cannot go back against his knowing and voluntary statements now. The "[e]ntry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir.1999). The statements made by Kern in the plea agreement and during the plea hearing are presumed to be true. *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000); *see also United States v. White*, 597 F.3d 863, 868 (7th Cir.2010) (stating that "[v]oluntary responses made by a defendant under oath before an examining judge ... are binding."). Kern cannot show that his plea was unknowing or involuntary.

Finally, perhaps Kern's motivation to plead guilty was to leave Henderson County Detention Center as soon as possible. (Dkt. 2.) If so, that shows a rational thought process, not coercion. Put differently, Kern's claim

is that he was motivated to plead guilty by his own personal preferences and desires; which makes his claim unquestionably knowing and voluntary.

Kern's claim is meritless and should be denied.

## CONCLUSION

For all the foregoing reasons, the United States respectfully urges the Court to deny Kern's § 2255 motion.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:   <u>s/ Lauren Wheatley</u>
Lauren Wheatley
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, a copy of the foregoing Response in Opposition to Section 2255 Motion was filed electronically and a copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

Anthony R. Kern
Register No. 12995-028
FCI
Inmate Mail/Parcels
P.O. Box 2000
Joint Base, MD 08640

s:/Lauren Wheatley
Lauren Wheatley
Assistant United States Attorney
Office of the United States Attorney