| | |
|---|---|
| UNITED STATES<br>   Respondent<br><br>v.<br><br>ANTHONY KERN<br>   Petitioner | Crim. No. 3:15-cr-00039-RLY-CMM<br>Civil No. 3:19-cv-0146-RLY-MP |

FILED

MAR 26 2020

U.S. CLERK'S OFFICE
EVANSVILLE, INDIANA

Petitioner's Reply
to Respondent's Opposition

NOW COMES Anthony Kern, Petitioner in the above captioned matter, replying to Respondent's December 6, 2019 Opposition to his §2255 motion. Respondent has wholly missed the point of Petitioner's ineffectiveness claim and has, either negligently or intentionally, misconstrued the arguments raised. Petitioner urges this Court to ignore Respondent's opposition brief and grant him the relief he requests. In support of this assertion, Petitioner states as follows:

### I - The Actual Ineffectiveness Ground

In its Opposition, Respondent believes that Petitioner "claims his counsel failed to obtain a more favorable plea agreement." Opp. Memo, p.7. This is a gross misrepresentation of the actual ground raised by Petitioner in his motion. Ground One of Petitioner's §2255 motion very clearly asserts that "counsel failed to timely communicate a plea offer to me" and "that delay caused the government to withdraw that plea offer, file a §851 enhancement against me, and offer a more restrictive 'C-plea' rather than the previously offered 'B-Plea'." Pet's §2255 Petition, p.5. It belies understanding how Respondent could so completely miscomprehend this ground or the argument made in support thereof. See Memo in Support, pp.5-7.

The entirety of Respondent's analysis regarding the first prong of the

Strickland test must be disregarded. As Petitioner very clearly demonstrates, Seventh Circuit precedent obligates counsel to effectively communicate formal plea offers from the government to his client. See Groves v. US, 755 F.3d 588, 592 (7th Cir, 2014) ("lawyers must tell their clients about offers of plea bargains," (internal citations omitted)), Overstreet v. Wilson, 686 F.3d 404, 406 (7th Cir, 2012) ("failure to communicate a plea offer is deficient performance" (emphasis added)), and Taylor v. Supt. Wabash Corr. Facility, 2018 US Dist LEXIS 128804 at *12 (SDIN, 8/1/18) (all parties agreed that counsel's failure to communicate a plea offer before it expired constituted ineffective assistance). It is without question that the government sent Petitioner's counsel a formal plea offer sometime in May, 2017. See Memo in Support "Exhibit A", ¶4. The Prosecutor herself admitted at Sentencing that "the government did offer a 'B-Plea' in the early stages." Sent.Trans., p.18. It is also undisputed that the early 'B-Plea' offer was rescinded because no action was taken by Petitioner's counsel. See Memo in Support "Exhibit A", ¶5. Counsel's failure to communicate the 'B-Plea' offer prior to its expiration is per se ineffectiveness. Petitioner, therefore, satisfies the first prong of the Strickland test.

In an attempt to reshape the narrative of the plea bargaining process, Respondent points to "[counsel]'s commendable performance during the plea negotiations." Opp. Memo, p.17. Although it is true that counsel worked diligently to convince the government to drop the §851 enhancement, those efforts were not part of some grand pre-trial strategy. They were, instead, an effort to mitigate the consequences of his own unconstitutionally deficient performance. The only reason the government filed the §851 enhancement at all was because they believed Petitioner had rejected the original plea offer by failing to take timely action on it. Had counsel brought that first plea

offer to Petitioner before it expired, no §851 enhancement would have been filed and those efforts of counsel would not have been necessary. So, while it is true that counsel "spent a great deal of time in [the US Attorney's] office explaining [Petitioner's] case and [counsel's] situation," Sent.Trans., p.23-24, the "situation" that required explanation was his own ineffectiveness by failing to bring the original plea offer to Petitioner in a timely manner. Those efforts cannot now be used to render counsel's deficient performance valid and defeat Petitioner's request for relief. Respondent's efforts in that regard are, at best, disingenuous and should be disregarded by this Court.

In addition, Respondent's analysis of the prejudice to Petitioner is completely inaccurate. Respondent claims Petitioner must demonstrate "he would not have pleaded guilty and would have insisted on going to trial." Opp.Memo, p.7 (citation ommitted). That is not at all the applicable standard here.

The US Supreme Court has made abundantly clear that when the ineffectiveness of counsel was the failure to timely deliver a plea offer, a petitioner satisfies the prejudice prong of Strickland by demonstrating two things: 1) "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded affective assistance of counsel," and 2) "a reasonable probability the plea would have been entered without the prosecution cancelling it or the trial court refusing to accept it." Missouri v. Frye, 566 US 134, 182 LED2d 379, 392 (2012). Here, both of these are easily met.

First, it is uncontested that Petitioner had every intention of accepting the government's original 'B-Plea' offer and pleading guilty under its terms. The very day counsel brought the 'B-Plea' to him, Petitioner said he would

accept that offer. Memo in Support "Exhibit A", ¶4. At Sentencing, Petitioner made clear that particular plea offer was "what [he] wanted," Sent.Trans., p.16, and that he "did not take that plea because [he] was delaying [the government]. [He] just never [saw] it. From [his] understanding, that was the plea [he] was getting." Id. Neither at Sentencing nor in their opposition memo does the government contest this assertion. The record is clear that Petitioner would have accepted this plea offer had he been afforded the affective assistance of counsel. Petitioner, therefore, satisfies this first part of the applicable prejudice standard.

The record is also devoid of any indication the court would have rejected that plea had it been submitted. In its opposition, Respondent does not claim any deficiency in that 'B-Plea' offer, nor does the lengthy discussion at Sentencing about that offer indicate that either the court or the government would have had a problem with it. Sent.Trans., pp.14-25. Indeed, the government indicated they "would have been arguing for a guideline plea and B Plea anyway." Id, p.18. There is no indication, therefore, that the government would have cancelled the plea or that court would have refused to accept it. Petitioner satisfies both prongs of the Frye prejudice standard and relief must be granted.

## II - Petitioner's Criminal History

Petitioner concedes that, given the mandatory nature of his Rule 11(c)(1)(C) plea agreement, counsel was unable to raise an argument at sentencing regarding Petitioner's criminal history calculation being overrepresentative. The very nature of the obligatory sentencing structure of the final plea agreement made such a calculation effectively meaningless. To the extent the opening brief may have seemed to imply this could have been an independent ground of ineffectiveness, Petitioner apologizes for his inartful

pleading in his pro se brief.

That being said, the issue of overstatement regarding Petitioner's criminal history is raised to demonstrate that the terms of the plea agreement he actually accepted were less favorable than the terms of the agreement he lost out on because of counsel's ineffectiveness. As stated above, the binding 'C-Plea' Petitioner signed locked-in a sentence of 216 months. Had counsel timely brought the government's original plea offer to him, Petitioner would have signed a 'B-Plea', a non-binding plea agreement that would have allowed the court to consider a sentence outside the recommended guidelines range. That is specifically where an argument based on USSG §4A1.3(b) would have been applicable.

As Petitioner very clearly lays out in his opening brief, the vast majority of his criminal history points come from motor vehicle infractions. See PSR, ¶s 39-50. This circuit has made abundantly clear that downward departures of a criminal history calculation are justified based on overrepresentation due to these kinds of minor convictions. See Memo in Support, pp.8-9 collecting cases. Such a downward departure of only one category to Category IV would have yielded a range of 188-235 months. USSG §5A. Given the government's admission that it would have been arguing for a sentence at the low end of the applicable range under a 'B-Plea', Sent.Trans., p.18, a sentence of 188 months would have been 28 months lower than his current sentence. If the Court took into consideration only his non-traffic related convictions, PSR ¶s 47&49, this would have resulted in a calculation of a criminal history Category III, which would have yielded a range of only 168-210 months, 48 months lower than his current sentence if the Court used the low end of that range. Such a downward departure was likely, given the Court's admission at sentencing that "his criminal history may be overstated."

Sent.Trans., p.28.

Ultimately, this clearly demonstrates the terms of the plea agreement Petitioner signed were less favorable than those he lost out on due to counsel's ineffectiveness. This supports Petitioner's request and strengthens the need for relief.

### III - Involuntariness

Respondent claims that Petitioner's acceptance of the 'C-Plea' because he wanted to get out of the Henderson County Detention Center (HCDC) as quickly as possible "shows a rational thought process," Opp.Memo, p.25, is grossly inadequate and wholly ignores the sworn statement made by Petitioner in his affidavit.

Although the government is correct that testimony of a defendant during a Rule 11 plea colloquy is "accorded a presumption of verity," US v. Elison, 835 F.2d 687, 693 (7th Cir, 1987), here it completely misses the point. The true test of whether a plea is voluntary is whether "it represents a voluntary and intelligent choice among the alternatives courses of action available to the defendant." North Carolina v. Alford, 400 US 25, 31 (1970). A full and honest evaluation of the circumstances surrounding Petitioner's acceptance of the 'C-Plea' demonstrates it was not an intelligent, rational choice and was, therefore, involuntary.

Petitioner clearly describes the harsh conditions of HCDC and the length of time he was subjected to them. See Memo in Support "Exhibit A", ¶s 6&7. He clearly describes how, in frustration of his attorney's lengthy deliberations with the government, he sought new counsel who told him "I can get that 'open' plea back for you." Id at ¶8. He clearly lays out his panicked acceptance of the 'C-Plea' after Attorney Lamont told him "you need to sign this now or it's just going to get worse for you." Id. at ¶9. But

nowhere in its opposition does Respondent even acknowledge Petitioner's affidavit. Nowhere does Respondent attempt to explain or even acknowledge Attorney Koch's statement that Petitioner "appear[ed] stressed by the circumstances" and that "it was unusual that [he] decided to hire me and then accepted the Plea Agreement prior to me becoming involved in the case." Memo in Support "Exhibit B". If nothing else, Petitioner's sworn statement should be accepted as unchallenged because of Respondent's failure to object. See Bonte v. US Bank NA, 624 F.3d 461, 466 (7th Cir, 2010) (failure to respond to an argument results in a waiver).

Regardless, because Petitioner's primary motivating factor when accepting the plea was his need to leave HCDC, his acceptance of that plea cannot be considered voluntary or intelligent. Petitioner knew the 'C-Plea' was not the best option available to him. Asking Attorney Koch to get back his original plea was that. But it would have meant staying longer at HCDC. Taking his case to trial, with the (admittedly unlikely) posibility of walking away a free man, would also have extended his stay at HCDC, something no longer tenable to Petitioner. So, despite his new lawyer, despite knowing this latest plea offer was less beneficial (something that was in no way his own fault), Petitioner signed it anyway. This is in no way a "rational thought process" and instead shows the process of a man willing to grasp at any chance to get away from the terrible circumstances of his detention at HCDC. This violates our vital understanding of fundamental fairness and due process. Petitioner's acceptance of the plea was involuntary and must be vacated.

## IV – Conclusion

"In a case such as this, where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable plea offer, Strickland's inquiry into whether the result of the proceeding would have been different requires looking not at whether the defendant would have proceeded to trial absent effective assistance, but whether he would have accepted to offer to plea pursuant to the terms earlier proposed."

Missouri v. Frye, 182 LED2d at 392.

Here, nothing more need be said. Petitioner's counsel was *per se* ineffective by failing to timely bring the government's original plea offer to him before it expired. It is uncontested that the terms of that earlier plea were more beneficial than those he finally accepted. It is uncontested that he would have accepted (indeed wanted to accept) that original 'B-Plea' offer. Respondent's attempt to misconstrue or misrepresent this argument in their opposition, either negligently or intentionally, is grossly unfair and must be disregarded by this Court. Also, when a defendant agrees to plead guilty to criminal charges simply because he can no longer tolerate the harsh conditions of his confinement, that offends our idea of due process and fundamental fairness. Such a plea must not be allowed to stand.

WHEREFORE all of these reasons, Petitioner urges this Court to ignore Respondent's opposition in its entirety, vacate both his sentence and conviction, and order the government to reoffer Petitioner the original 'B-Plea' first proposed in May, 2017, and grant any and all other such relief it feels equitable and just.

Respectfully submitted,

Dated January 6, 2020

Anthony Kern, pro se
Reg. No. 12995-028
FCI-Fort Dix
PO Box 2000
Joint Base MDL, NJ 08640

## Certificate of Service

I, Anthony Kern, do hereby certify that on this 6th day of January, 2020 I did serve a true and accurate copy of the attached Petitioner's Reply to Respondent's Opposition on Respondent at 10 West Market St., Suite 2100, Indianapolis, IN 46204-3048 via the official Inmate Legal Mail system of FCI-Fort Dix, First Class US Mail, postage pre-paid.

Anthony Kern
Reg. No. 12995-028
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640